**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ANGELA BROWN, | Case No.: 13 Civ 0760 |
| Plaintiff, | |
| -against- | |
| MERMAID PLAZA ASSOCIATES LLC and C&J DONUTS, INC., | |
| Defendants. | |

## <u>MEMORANDUM OF LAW</u>

Submitted in Support of:
Defendant Mermaid Plaza Associates LLC's
Motion for Summary Judgment
Pursuant to Fed. R. Civ. P. 56

Respectfully submitted by:
Wilson Elser Moskowitz Edelman & Dicker LLP

Attorneys for Defendant
Mermaid Plaza Associates LLC
150 East 42nd Street
New York, NY 10017
212.490.3000 (Main)
212.490.3038 (Fax)

Jura C. Zibas
Stephen J. Barrett

8312309v.2

## TABLE OF CONTENTS

**Page**

FACTS AND PROCEDURAL HISTORY ................................................................. 1

STANDARD OF REVIEW .................................................................................. 5

ARGUMENT ..................................................................................................... 6

    POINT I        PLAINTIFF LACKS STANDING AS TO THE ALLEGED
                      DEFICIENCIES ................................................................ 6

    POINT II      THE REMAINING ALLEGED DEFICIENCIES ARE MOOT .............. 10

          1.      The West 30th Street Ramp ................................................ 12

          2.      The West 31st Street Ramp................................................. 16

          3.      The Parking Lot Access Aisles ........................................... 17

    POINT III     THE RECORD IS DEVOID OF EVIDENCE SUPPORTING ANY
                      ELEMENT OF PLAINTIFF'S CLAIM UNDER 42 U.S.C. § 1985 ........ 20

    POINT IV     PLAINTIFF'S STATE AND CITY LAW CLAIMS MUST BE
                      DISMISSED ..................................................................... 21

CONCLUSION.................................................................................................. 24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Access Now, Inc. v. Ambulatory Surgery Ctr. Group, Ltd.*,
    2001 U.S. Dist. LEXIS 6660 (D. Fla. 2001) .......................................................... 15

*Already, LLC v. Nike, Inc.*,
    133 S. Ct. 721 (2013) ........................................................................................... 10

*Azelyant v. B. Manischewitz Co.*,
    No. 98-CV-2502(ILG), 2000 U.S. Dist. LEXIS 2192 (E.D.N.Y. Jan. 12, 2000) .................... 11

*Bacon v. Walgreen Co.*,
    No. 14-CV-419 (JFB) (ARL), 2015 U.S. Dist. LEXIS 35184
    (E.D.N.Y. Mar. 20, 2015) ........................................................................... 5, 11, 12

*Bernstein v. City of New York*,
    13-CV-04610 (CM)(SN), 2015 U.S. Dist. LEXIS 18810 (S.D.N.Y. Jan. 7, 2015).. 6, 7, 8, 9, 10

*Cave v. E. Meadow Union Free Sch. Dist.*,
    480 F. Supp. 2d 610 (E.D.N.Y. 2007) .................................................................. 22

*Cruz v. PS1 Contemporary Art. Ctr.*,
    No. 10-CV-4899 (RRM) (JMA), 2011 U.S. Dist. LEXIS 84763 (E.D.N.Y. Aug. 1,
    2011) ........................................................................................................... 24

*Feltenstein v. Wykagyl Assocs. HJ, LLC*,
    184 F. Supp. 3d 76 (S.D.N.Y. 2016) ......................................................... 12, 16, 17

Francis v. Lo-Do Corp.,
    No. 14-CV-5422, 2014 U.S. Dist. LEXIS 173479, 2014 WL 7180091 (S.D.N.Y. Dec.
    5, 2014) ........................................................................................................ 23

*Harris v. Costco Wholesale Corp.*,
    389 F. Supp. 2d 1244 (S.D. Cal. 2005) .................................................................. 7, 9

*Hartnett v. Fielding Graduate Institute*,
    400 F. Supp. 2d 570 (S.D.N.Y. 2005) aff'd in part and rev'd in part on other grounds,
    198 Fed. Appx. 89 (2d Cir. 2006) ........................................................................ 22

*Harty v. Greenwich Hosp. Group LLC*,
    536 Fed. Appx. 154 (2d Cir. 2013) ........................................................................ 6

*Hubbard v. 7-Eleven, Inc.*,
    433 F. Supp. 2d 1134 (S.D. Cal. 2006) ............................................................. 6, 7, 9

*Indep. Living Res. v. Or. Arena Corp.*,
   982 F. Supp. 698 (D. Or. 1997) ......................................................................... 16, 19

*Inguanzo v. Hous. & Servs., Inc.*,
   No. 12-CV-8212 (ER), 2014 U.S. Dist. LEXIS 132197 (S.D.N.Y. Sept. 19, 2014)............... 23

*Irish Lesbian & Gay Org. v. Guiliani*,
   143 F.3d 638 (2d Cir. 1998) ................................................................................ 11

*Jaramillo v. Weyerhaeuser Co.*,
   536 F.3d 140 (2d Cir. 2008) ............................................................................ 20, 21

*Jones v. Dollar Tree Stores, Inc.*,
   No. 2:04-CV-2002-MCE-KJM, 2006 U.S. Dist. LEXIS 31766 (E.D. Cal. May 19,
   2006) ......................................................................................................... 15, 19

*Kohler v. Flava Enters.*,
   779 F.3d 1016 (9th Cir. 2015) ............................................................................. 15

*Kohler v. In-N-Out Burgers*,
   No. cv 12-5054-GHK, 2013 U.S. Dist. LEXIS 138646 (C.D. Cal. Sept. 12, 2013) .......... 11, 12

*Kolari v. New York-Presbyterian Hosp.*,
   455 F. 3d 118 (2d Cir. 2006) ............................................................................... 23

*Kreisler v. Second Ave. Diner Corp.*,
   No. 10 Civ. 7592 (RJS), 2011 U.S. Dist. LEXIS 116666 (S.D.N.Y. Oct. 5, 2011),
   aff'd, 731 F.3d 184 (2d Cir. 2013)............................................................... 6, 7, 8, 9

*LaFleur v. S&A Family, LLC*,
   No. CV 13-01297-MWF, 2014 U.S. Dist. LEXIS 76898 (C.D. Cal. May 13, 2014).............. 11

*Langer v. Encantado II, LLC*,
   No. 14cv2281-MMA, 2015 U.S. Dist. LEXIS 43558 (S.D. Cal. Apr. 1, 2015)...................... 11

*Levesque v. CVPH Med. Ctr.*,
   No. 12-CV-960, 2015 U.S. Dist. LEXIS 46878 (N.D.N.Y. Mar. 23, 2015) *adopted at*
   2015 U.S. Dist. LEXIS 46796 (N.D.N.Y. Apr. 10, 2015)...................................................... 11

*Mian v. Donaldson, Lufkin & Jenrette Securities Corporation*,
   7 F.3d 1085 (2d Cir. 1993) .................................................................................. 20

*Norkunas v. Seahorse NB, LLC*,
   444 Fed. Appx. 412 (11th Cir. Oct. 25, 2011)........................................................... 7, 9

*Panzica v. Mas-Maz, Inc.*,
   No. CV 05-2595 (ARL), 2007 U.S. Dist. LEXIS 42171 (E.D.N.Y. June 11, 2007)............ 7, 22

8312309v.2

*Pickern v. Holiday Quality Foods*,
  293 F.3d 1133 (9th Cir. 2002) ................................................................. 6

*Roberts v. Royal Atl. Corp.*,
  542 F.3d 363 (2d Cir. 2008) ................................................................. 20

*Roggenbach v. Touro College of Osteopathic Medicine*,
  7 F. Supp. 3d 338 (S.D.N.Y. 2014) ................................................................. 23

*Scheiner v. ACT Inc.*,
  No. 10-CV-0096 (RRM) (RER), 2013 U.S. Dist. LEXIS 25204 (E.D.N.Y. Feb. 24,
  2013) ................................................................. 11

*Shepard v. Frontier Commc'n Servs., Inc.*,
  92 F. Supp. 2d 279 (S.D.N.Y. 2000) ................................................................. 22

*Small v. General Nutrition Cos.*,
  388 F. Supp. 2d 83 (E.D.N.Y. 2005) ................................................................. 6

*Thomas v. West*,
  No. 14 CV 4459-LTS, 2017 U.S. Dist. LEXIS 37542 (S.D.N.Y. Mar. 15, 2017) ................. 23

*Tjeknavorian v. Mardirossian*,
  No. 14-CV-5723 SAS, 2014 U.S. Dist. LEXIS 150364 (S.D.N.Y. Oct. 22, 2014).................. 5

*Whethers v. Nassau Healthcare Corp.*,
  No. 13 Civ. 2991, 578 Fed. Appx. 34 (2d Cir. Sept. 18, 2014) ................................ 5

**Statutes**

42 U.S.C § 12205 ................................................................. 24

NYSCRL § 40-c ................................................................. 22

NYSCRL § 40-d ................................................................. 22

**Regulations**

28 C.F.R. § 35.151(a)(1) ................................................................. 18

28 C.F.R. § 35.151(c)(1) ................................................................. 15

8312309v.2

This memorandum of law is respectfully submitted in support of the motion for summary judgment pursuant to Fed. R. Civ. P. 56 of defendant MERMAID PLAZA ASSOCIATES LLC ("Defendant" or "Mermaid").

## FACTS AND PROCEDURAL HISTORY

When the property at issue was initially constructed, it was fully compliant with the Americans with Disabilities Act ("ADA") and all applicable building codes. *See* Defendant's Statement of Undisputed Material Fact Pursuant to Local Civil Rule 56.1, and the evidence cited therein [hereinafter "56.1"], at ¶ 1. Prior to the instant lawsuit, no one had ever complained about the accessibility of the property and no lawsuit regarding the accessibility had ever been filed despite the property remaining in approximately the same condition since its construction in the early 1990s. *Id*. at ¶ 2.

Notably, the property sits in a high risk flood zone. *Id*. at ¶ 3. In October 2012, the entire area surrounding the property was decimated by Superstorm Sandy—less than four months before plaintiff filed the complaint. *Id*. at ¶ 4. Following the storm, FEMA used the property's parking lot as one of its command locations for Coney Island, installing numerous trailers, etc. on the property, which applied significant weight to the already softened underground soil. *Id*. at ¶ 5.

Plaintiff's complaint was filed on February 9, 2013. *See* Dkt. 1. At the time the complaint was filed, no expert inspection of the property had ever taken place. *Id*. at ¶ 9. Accordingly, the allegations in the complaint were not based on any pre-suit investigation. Rather, plaintiff's allegations were premised solely on the rank speculation of counsel.

Following joinder of issue, plaintiff circulated a proposed settlement agreement, which only required Mermaid to install additional parking lot signs and handrails along the outdoor

1

handicap ramps within nine months.  *Id.* at ¶ 8.   Still no expert inspection of the property had been conducted by this time.  *Id.* at ¶ 9.

On November 14, 2013, plaintiff served her first expert report.  In addition to the prior requests for handrails and parking lot signs, plaintiff added additional complaints about the slopes of various walkways and curb ramps.  *Id.* at ¶ 10.

On May 2, 2014, plaintiff appeared for a deposition.  Plaintiff testified that she had never been unable to visit the property, and successfully frequented the property as recently as April 2014.  *See Id.* at ¶ 11 (quoting Deposition Transcript of Angela Brown [hereinafter "Brown Dep."], annexed to the Declaration of Jura Zibas as Ex. F, at 16:8-11).  Plaintiff specifically testified that there was "a ramp that you can go up" in front of Dunkin Donuts.  Brown Dep. at 18:10-11.

Plaintiff did vaguely testify that when going to the Rite Aid on the property it was "hard to get around there" because the ramp was "awkward."  *Id.* at 19:6-7, 12.  However, plaintiff was not deterred from using the public accommodation beyond the need to traverse a somewhat "bumpy" ramp.  *Id.* at 20:17-20; 23:7-19.  She has continued to use the property throughout the pendency of this lawsuit.  *Id.* at 43:22-44:3; *see also* Plaintiff's Response to Defendant's Proposed Rule 56.1 Statement, available at Dkt. 91, at ¶ 11 (admitting that Plaintiff "has continued to use the property throughout the pendency of this lawsuit.").

Prior to plaintiff's deposition, Mermaid decided to gratuitously make improvements to its property:  In April 2014, Mermaid added additional handicap signage for all handicap parking spaces; verified that all handicap parking was provided with an 8'-0" access aisle; ensured that the drop curbs were code complaint; and patched settled asphalt in the parking area at the

handicap drop curbs. *See* 56.1 at ¶ 13. In total, Mermaid spent over $12,000 on these improvements. *Id.*

Thereafter, plaintiff sent a new expert to the property to complete a second report. On May 28, 2014, plaintiff served her second expert report. This report confirmed that the ramps in front of Rite Aid—i.e. the primary condition plaintiff complained about at her deposition—was now fully compliant. *Id.* at ¶ 14.

But plaintiff's second expert report raised new issues, like the height of parking lot signs and the slope of the parking lot asphalt—despite the fact that plaintiff did not testify that any of these alleged issues impacted her ability to use the property. *Id.* at ¶ 15.

After receiving plaintiff's second report, Mermaid continued, in good faith, to make improvements to the property: In July 2014, Mermaid installed new railings on the handicap ramps, repaired some additional asphalt in the parking lot, and added more handicap parking signs. *Id.* at ¶ 16. These additional alterations cost over $18,000. *Id.*

In July 2014, Mermaid also retained its ADA expert from United Spinal Association. Mermaid's expert prepared a report rebutting the points raised in plaintiff's second expert report, and concluded that the property was compliant with the ADA. *Id.* at ¶ 17.

In response, Plaintiff retained a third expert to prepare a third expert report. In November 2014, plaintiff served her third expert report which again pivoted and now recommended, for the first time, that Mermaid "[r]epave the parking spaces and access aisle[s] so that surface slopes are not steeper than 2%." *Id.* at ¶ 18 (quoting Plaintiff's Third Expert Report (Ex. N) at ¶¶ 007, 008).

In response to plaintiff's latest report, Mermaid's expert provided a supplemental expert report in early 2015. Mermaid's expert indicated that the cross slopes in question had been

3

"gently sloped," and that "[s]lightly grading the pavement between access aisle and concrete is permitted by § 202.3, Exception 1 of the ADA Standards that provides an exception where compliance with applicable requirements is technically infeasible…the alternation shall comply with the requirements to the maximum extent feasible." *Id.* at ¶ 21 (quoting Mermaid's Supplmental Expert Report (Ex. O)).

Mermaid's Supplemental Expert Report was consistent with its first report in which Mermaid's expert explained that the paving work at the property is ADA compliant to the maximum extent feasible because the "re-grading necessary to achieve a complaint slope…would necessitate extending the asphalt into neighboring spaces or the vehicular way." *Id.* at ¶ 22.

Mermaid also endeavored to determine the cost and feasibility of re-paving the parking lot. A paving company was asked to assess the prospects of re-paving the lot and, in August 2015, Mermaid was told that "[a] 2% pitch in the asphalt work is hard to achieve," and the paving company refused to commit to being able to make the lot perfectly level. *Id.* at ¶ 23. Despite this proviso, the cost of the proposed work was estimated at $135,000, and the lot would need to be closed for 7-10 days. *Id.*

Today, the property is fully complaint with the ADA. *See id.* at ¶ 17, 21-22 (citing Mermaid's Expert Reports (Exs. M, O)). In fact, the condition of the property evidences that it is well maintained and accessible. *See Id.* at ¶ 24. Nevertheless, Plaintiff's operative expert report claims that there are four deficiencies at the subject property: (1) the slopes and handrails on the West 30th Street ramp; (2) the slopes and handrails on the West 31st Street ramp; (3) the slope of the parking lot access aisles in front of Rite Aid; and (4) the slope of the parking lot access aisles in front of Dunkin Donuts [hereinafter collectively, the "Alleged Deficiencies"]. *See generally*

4

Plaintiff's Third Expert Report, annexed to the Declaration of Jura Zibas as Ex. N.  For each of these items, Plaintiff's expert offers proposed changes to the property.  *See id*.

As discussed below, none of plaintiff's suggested changes are required by law, and summary judgment in Mermaid's favor is therefore warranted.

## STANDARD OF REVIEW

"Summary judgment is appropriate [w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Tjeknavorian v. Mardirossian*, No. 14-CV-5723 SAS, 2014 U.S. Dist. LEXIS 150364, at *5-6 (S.D.N.Y. Oct. 22, 2014) (internal quotations omitted) (citing *Whethers v. Nassau Healthcare Corp.*, No. 13 Civ. 2991, 578 Fed. Appx. 34 (2d Cir. Sept. 18, 2014)).  Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law."  *Bacon v. Walgreen Co.*, No. 14-CV-419 (JFB) (ARL), 2015 U.S. Dist. LEXIS 35184, at *5 (E.D.N.Y. Mar. 20, 2015).

The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [it] must come forward with specific facts showing that there is a *genuine issue for trial*."  *Id*. at *6 (emphasis in original) (quotations omitted).  The party opposing summary judgment "may not rest upon mere conclusory allegations or denials but must set forth 'concrete particulars' showing that a trial is needed."  *Id*.  "[I]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id*.  Further, "the mere existence of *some* alleged factual dispute between the parties alone will not defeat an otherwise properly supported motion for summary judgment."  *Id*. (emphasis in original). Ultimately, "it is insufficient for a party opposing summary judgment to merely assert a conclusion without supplying supporting arguments or facts."  *Id*. at *6-7 (quotations omitted).

8312309v.2

**ARGUMENT**

**POINT I**

**PLAINTIFF LACKS STANDING AS TO THE ALLEGED DEFICIENCIES**

Article III standing requires "(1) an injury in fact that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) redressability of the injury by a favorable decision." *Kreisler v. Second Ave. Diner Corp.*, No. 10 Civ. 7592 (RJS), 2011 U.S. Dist. LEXIS 116666, at *3 (S.D.N.Y. Oct. 5, 2011), aff'd, 731 F.3d 184 (2d Cir. 2013).  To establish ADA standing, a plaintiff must allege and establish: (1) past injury to the plaintiff, (2) the allegedly discriminatory treatment will continue, and (3) plaintiff intends to return to the premises.  *Harty v. Greenwich Hosp. Group LLC*, 536 Fed. Appx. 154 (2d Cir. 2013); *see also Small v. General Nutrition Cos.*, 388 F. Supp. 2d 83, 88 (E.D.N.Y. 2005) ("once a plaintiff has actually become aware of discriminatory conditions existing at a public accommodation, *and is thereby deterred* from visiting or patronizing that accommodation, the plaintiff has suffered an injury") (emphasis added) (*quoting Pickern v. Holiday Quality Foods*, 293 F.3d 1133, 1136-37 (9th Cir. 2002)).

Although broad, standing is not limitless: "Ensuring that standing requirements are met by each plaintiff in each lawsuit brought under the ADA enables courts to ensure that the ADA is not being abused. . ." *Bernstein v. City of New York*, 13-CV-04610 (CM)(SN), 2015 U.S. Dist. LEXIS 18810, at *19 (S.D.N.Y. Jan. 7, 2015).  "ADA plaintiffs must at least prove actual knowledge of the barriers and show that they would visit the building in the imminent future but for those barriers." *Kreisler*, 2011 U.S. Dist. LEXIS 116666, at *4 (quotations omitted).

Courts have held that plaintiffs have standing only as to "barriers they encountered or had knowledge of *prior to filing suit*." *Hubbard v. 7-Eleven, Inc.*, 433 F. Supp. 2d 1134, 1144 (S.D.

Cal. 2006) (emphasis added).  "[T]here is nothing…indicating that a plaintiff can seek removal of barriers that he learns about through expert reports after filing the complaint." *Id.* at 1141-44 (holding that "Plaintiffs can only sue for barriers they encountered or had knowledge of prior to filing suit."). This is reasonable because "[a]n encounter with an [ADA Accessibility Guidelines] defined barrier that a disabled person does not notice (or that does not affect the individual) is not a 'distinct and palpable' injury" for purposes of the standing inquiry. *Bernstein*, 2015 U.S. Dist. LEXIS 18810, at *26 ("[plaintiff] has failed to establish the injury in fact prong of standing by alleging either injury caused to him personally by an actual ADA violation, or that [defendant's] noncompliance has deterred him from visiting the [property]").[1]

Plaintiff will likely argue that *Kreisler* establishes the general proposition that as long as she has standing as to one alleged barrier, she has standing as to all alleged barriers.  731 F.3d at 188.  *But see Norkunas v. Seahorse NB, LLC*, 444 Fed. Appx. 412, 415-16 (11th Cir. Oct. 25, 2011) (plaintiff did not have standing as to barriers he did not encounter; "[plaintiff] argues that the statutory language of the ADA allows for standing to bring an entire facility into compliance once one barrier is encountered. We reject this construction.").  The *Kreisler* plaintiff could not enter a diner via wheelchair due to a large entrance step.  731 F.3d at 186.  The diner argued that plaintiff lacked standing as to interior barriers because he never attempted to enter and thus never encountered the barriers.  *Id.* at 188.  The *Kreisler* plaintiff was aware of the other alleged barriers (i.e., those he did not encounter, but would have if he could enter) prior to filing his lawsuit.  *Id.* The court found that since plaintiff had standing as to the entrance barrier, she had

---

[1] *See also Harris v. Costco Wholesale Corp.*, 389 F. Supp. 2d 1244, 1249 (S.D. Cal. 2005) (there was "no evidence that prior to filing suit, [plaintiff] was aware of any architectural barriers" and "[t]hus, [plaintiff's] standing to bring an ADA action must rest on the architectural barriers he contends he encountered during the visit that pre-dates the filing of the Complaint"); *Panzica v. Mas-Maz, Inc.*, No. CV 05-2595 (ARL), 2007 U.S. Dist. LEXIS 42171, at *7 (E.D.N.Y. June 11, 2007) ("a plaintiff suffers injury-in-fact if she personally encounters the barrier to access complained of, or she has actual knowledge of the barrier complained of and has been deterred from visiting the public accommodation because of that barrier.").

standing as to all barriers "related to his disability that he would likely encounter were he able to access the Diner." *Id*. The Second Circuit held that it "need not consider whether a plaintiff has standing to challenge ADA violations that he became aware of after the lawsuit's commencement." *Id*.

*Kreisler* is distinguishable on two grounds. First, unlike the *Kreisler* plaintiff, Ms. Brown was not aware of any alleged barriers at the time she filed her lawsuit other than the "bumpy" Rite Aid ramp and the height of the handicap parking signs (both of which have already been remedied), in addition to complaints about the interior of Dunkin Donuts that were promptly abandoned when co-defendant C&J DONUTS, INC. failed to appear in the action. *See generally*, Brown Dep. at 18-20. Indeed, she was not even aware of any other barriers at the time of her deposition.

The list of Alleged Deficiencies now at issue is thus entirely lawyer-driven. The alleged deficiencies regarding the ramps on West 30th and West 31st Streets do not even appear in the Complaint (*see* Dkt. 1), while the alleged deficiencies regarding the parking lot were not quantified until after plaintiff's deposition and were only identified by plaintiff's expert—not plaintiff herself. *See* 56.1 at ¶¶ 12, 14-15, 18. The Second Circuit specifically stated in *Kreisler* that it was not deciding whether standing would apply in a case like this. 731 F.3d at 186. This Court should rule that standing does not apply to alleged barriers that a plaintiff never encountered and knew nothing of, despite having full access to the premises. *See Bernstein*, 2015 U.S. Dist. LEXIS 18810, at *26 ("An encounter with an [ADA Accessibility Guidelines] defined barrier that a disabled person does not notice (or that does not affect the individual) is not a 'distinct and palpable' injury" for purposes of the standing inquiry.).

Second, the *Kreisler* plaintiff was unable to access the property at all.  Here, in contrast, plaintiff admits that she routinely has accessed the premises and continues to do so to this day. *See* 56.1 at ¶¶ 11-12.   Plaintiff testified that she was never unable to visit the property, and successfully frequented the property continuously, including during the pendency of the lawsuit. *Id.*; *see also* Plaintiff's Response to Defendant's Proposed Rule 56.1 Statement, available at Dkt. 91, at ¶ 11 (admitting that Plaintiff "has continued to use the property throughout the pendency of this lawsuit.").

The Alleged Deficiencies were identified solely by plaintiff's attorney, and were not identified by plaintiff as actual barriers to her enjoyment of the property during her deposition. As stated, the alleged deficiencies regarding the West 30th Street and West 31st Street ramps do not even appear in the plaintiff's complaint at all, and plaintiff never complained about the access aisles in the parking lot.  Furthermore, the alleged deficiencies regarding the parking lot access aisles do not apply to plaintiff because she does not drive to the property (Brown Dep. at 14:8-9), and when she is driven to the property by others she does not bring her wheelchair because she travels in a truck that is not wheelchair equipped.  *See* Brown Dep. at 15:3-7. Accordingly, Ms. Brown lacks standing as to any and all alleged barriers that she had no knowledge of prior to her lawsuit, and that she did not notice or encounter during her multiple trips. *See Bernstein*, 2015 U.S. Dist. LEXIS 18810, at *26; *Hubbard*, 433 F. Supp. 2d at 1141-44; *Harris*, 389 F. Supp. 2d at 1249; *Norkunas*, 444 Fed. Appx. at 415-16.

Ms. Brown's case is akin to *Bernstein*, a case decided after *Kreisler*, where the plaintiff failed to offer any evidence that he actually encountered the barriers listed in his expert's report. 2015 U.S. Dist. LEXIS 18810, at *22-23.   The *Bernstein* plaintiff alleged that he encountered all of the ADA barriers listed in his expert's report (which detailed a multitude of alleged ADA

8312309v.2

violations at Central Park), but provided no evidence or allegations regarding "when or where he encountered these obstacles[.]"   *Id*. at *22-23.   Importantly, the court noted that plaintiff's expert failed to establish that he examined the identified barriers "because [plaintiff] encountered them during a visit." *Id*. at *23.   The *Bernstein* court found that plaintiff's blind reliance on his expert's report did not satisfy Article III's requirement of "concrete" and "particularized" harm. 2015 U.S. Dist. LEXIS 18810, at *25 (recognizing that an expert's list of alleged barriers "cannot substitute for the factual allegations required to satisfy Article III's requirement of an injury-in-fact") (citations omitted).

Plaintiff's operative expert report suffers from the same deficiency here.   Ms. Brown's current list of supposed violations cannot substitute for the necessary evidence required to show that she has standing as to each alleged barrier.   Because Ms. Brown never encountered, was not affected by, was not deterred by, and was unaware of the Alleged Deficiencies listed in Plaintiff's operative expert report, the Court should find that she lacks standing and that summary judgment on these Alleged Deficiencies is proper.

## POINT II

## THE REMAINING ALLEGED DEFICIENCIES ARE MOOT

The Alleged Deficiencies enumerated in Plaintiff's operative expert report are moot.   For jurisdictional purposes, a case or controversy must exist "not only at the time the complaint is filed, but through all stages of litigation." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013) (quotations and citations omitted). "A case becomes moot – and therefore no longer a 'Case' or 'Controversy' for purposes of Article III – when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."   *Id*. (quotations and citations omitted). "Mootness is a jurisdictional defect and deprives a court of the authority to adjudicate a case."

8312309v.2

*Scheiner v. ACT Inc.*, No. 10-CV-0096 (RRM) (RER), 2013 U.S. Dist. LEXIS 25204, at *7 (E.D.N.Y. Feb. 24, 2013) ("Mootness results when interim relief or events have eradicated the effects of the defendant's act or omission, and there is no reasonable expectation that the alleged violation will recur") (quoting *Irish Lesbian & Gay Org. v. Guiliani*, 143 F.3d 638, 647 (2d Cir. 1998)).

"[A] claim under the ADA can become moot if a defendant remedies the access barrier during the pendency of the litigation." *Bacon*, 2015 U.S. Dist. LEXIS 35184, at *7 (ADA claim moot because "defendant has remedied the alleged access barrier, and the Court does not reasonably expect that defendant will move the security sensors to an impermissibly narrower position"). *See also Levesque v. CVPH Med. Ctr.*, No. 12-CV-960, 2015 U.S. Dist. LEXIS 46878, at *8-9 (N.D.N.Y. Mar. 23, 2015), *adopted at* 2015 U.S. Dist. LEXIS 46796 (N.D.N.Y. Apr. 10, 2015) (recommending dismissal of ADA claim because of "reasonable expectation that the alleged offense will not occur again, thereby rendering [plaintiff's] claim moot"). "If the challenged condition has been remedied by the defendant, a plaintiff has received everything to which he would have been entitled under the ADA, and the claim is usually moot." *Kohler v. In-N-Out Burgers*, No. cv 12-5054-GHK, 2013 U.S. Dist. LEXIS 138646, at *21 (C.D. Cal. Sept. 12, 2013).[2]

To determine whether an ADA claim is moot, courts consider whether "(1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Bacon*, 2015 U.S. Dist. LEXIS 35184, at *8 (ADA claim moot where defendant remedied barrier by bolting

---

[2] *See also Azelyant v. B. Manischewitz Co.*, No. 98-CV-2502(ILG), 2000 U.S. Dist. LEXIS 2192, *23-24 (E.D.N.Y. Jan. 12, 2000) (mooted ADA claims dismissed); *LaFleur v. S&A Family, LLC*, No. CV 13-01297-MWF, 2014 U.S. Dist. LEXIS 76898, at *9-11 (C.D. Cal. May 13, 2014) (ADA claims moot because defendant's permanent changes brought barriers into compliance with ADA and barriers could not be expected to recur); *Langer v. Encantado II, LLC*, No. 14cv2281-MMA, 2015 U.S. Dist. LEXIS 43558, at *8 (S.D. Cal. Apr. 1, 2015) (defendants remedied the ADA violation, thereby rendering plaintiff's ADA claim moot).

sensors at proper distance; plaintiff's "speculative and conjectural" theory that defendant "may" revert to noncompliance did not prevent dismissal). "The suggestion that Defendant might revert to non-compliance [after remedying ADA issues] is illogical, however, because doing so would actually cost Defendant more than maintaining compliance." *Kohler*, 2013 U.S. Dist. LEXIS 138646, at *21-22 (quotations omitted) (finding that "there is no evidence or any reason to suggest that Defendant will revert to non-compliance with the ADA."). Indeed, "it makes no sense for [a defendant] to spend more money to revert to non-compliance, especially where there is no evidence that [it] would derive any benefit from such reversion." *Id.* ("where…there is no reasonable…expectation that the alleged violation will recur, and where intervening events have completely and irrevocably eradicated the effects of the violation, the case will be moot.").

Here, like *Kohler*, it would not make any sense and "would actually cost [Mermaid] more" money to "revert to non-compliance with the ADA." 2013 U.S. Dist. LEXIS 138646, at *21-22. Further, Mermaid's remedies "have completely and irrevocably eradicated the effects of the alleged violation." *Bacon*, 2015 U.S. Dist. LEXIS 35184, at *8. Accordingly, the Alleged Deficiencies contained in plaintiff's operative expert report should be dismissed as moot, and summary judgment should be granted in Mermaid's favor.

### 1. The West 30th Street Ramp

Plaintiff's expert complains about the slopes of the West 30th Street ramp, and about the lack of handrail extensions at the base of the ramp. But Plaintiff's complaint does not even mention the West 30th Street ramp at all, rendering this alleged deficiency beyond the scope of the case and therefore subject to dismissal on this basis alone. *See Feltenstein v. Wykagyl Assocs. HJ, LLC*, 184 F. Supp. 3d 76, 82 (S.D.N.Y. 2016) ("Put bluntly, plaintiff has not alleged

the very claim as to which she now seeks judgment in her favor. This alone provides a sufficient basis for a ruling in favor of defendant.").

In any event, Plaintiff's expert misstates the code's requirements. The bottom flag of the West 30th Street ramp measures 8%, which is fully compliant with Section 405.2 of the 2010 ADA Standards and Section 4.8.2 of the 1991 ADA Standards. *See* Mermaid's Supplemental Expert Report (Ex. O) at ¶ 1. This compliant measurement is an empirical fact, backed up with photographic evidence, that is beyond any real dispute (*id*.; 56.1 at ¶ 24):



Likewise, the sidewalk flags at the top of the ramp fully comply with Section 405.7 of the 2010 ADA Standards and Section 4.8.4 of the 1991 ADA Standards because handrails were extended to incorporate the portion of the ramp that exceeded 5% at the top of the ramp. *See* Mermaid's Supplemental Expert Report (Ex. O) at ¶ 2. Again, compliance cannot be genuinely disputed in the face of the photographic evidence showing the handrail extensions (*id*.; 56.1 at ¶ 24):

8312309v.2



Finally, at the bottom of the ramp, the handrails cannot be extended further because such an extension would block the public sidewalk. Section 505.10, Exception 3 of the 2010 ADA Standards expressly provides for this situation, stating "…full extensions of handrails shall not be required where such extensions would be hazardous due to plan configuration." Here, extending the handrails into the public sidewalk would create a hazardous condition for pedestrians:



Therefore, Exception 3 applies. *See* Mermaid's Supplemental Expert Report at ¶ 3. Accordingly, the West 30th Street ramp fully complies with the applicable code.

Moreover, even if technical compliance was still in doubt (which it is not), summary judgment would still be warranted. Section 2.2 of the 1991 Standards (hereinafter, the "Equivalent Facilitation Rule") provides: "Departures from particular technical and scoping

requirements of this guideline by the use of other designs and technologies are permitted where the alternative designs and technologies used will provide substantially equivalent or greater access to and usability of the facility."  1991 ADA Standards § 2.2; *see also* 28 C.F.R. § 35.151(c)(1) (incorporating the language of the Equivalent Facilitation Rule into the 2010 ADA Standards).

"Pursuant to the doctrine of equivalent facilitation, employing alternatives which provide equal or greater access to disabled patrons does not violate the ADA merely by virtue of the fact those alternatives do not comply with the strict terms of the [code]."  *Jones v. Dollar Tree Stores, Inc.*, No. 2:04-CV-2002-MCE-KJM, 2006 U.S. Dist. LEXIS 31766, *21 (E.D. Cal. May 19, 2006) (citing *Access Now, Inc. v. Ambulatory Surgery Ctr. Group, Ltd.*, 2001 U.S. Dist. LEXIS 6660, 28-30 (D. Fla. 2001)).   Accordingly, a property with minor technical deviations from the code does not violate the ADA if equivalent access is afforded.

The court's ruling in *Jones* is instructive here.  There, the Federal District Court for the Eastern District of California applied the equivalent facilitation doctrine to hold that signage designating the women's restroom facilities in a retail store complied with the ADA even though the signage was mounted on the wall adjacent to the latch side of the door at the height of 59 ¾ inches rather than 60 inches as required by the code.  Although the court acknowledged there was a variance with the "strict terms of the ADA," this variance did not create an ADA violation. *See Jones*, 2006 U.S. Dist. LEXIS 31766 at *20-21; *see also Kohler v. Flava Enters.*, 779 F.3d 1016 (9th Cir. 2015) (holding that a dressing room bench longer than the ADA specifications did not constitute a violation of the ADA because the disabled plaintiff who used a wheelchair admitted that he could transfer onto the bench in the defendant's retail store).

The key inquiry is not whether there is exact numerical compliance with the code. Rather, the relevant inquiry is whether "persons with disabilities have the opportunity to benefit from public accommodations." *Indep. Living Res. v. Or. Arena Corp.*, 982 F. Supp. 698, 727 (D. Or. 1997). Here, access has been provided via the West 30th Street ramp. Plaintiff's continued use of the property and plaintiff's failure to complain about the West 30th Street ramp are dispositive on this point. Accordingly, Plaintiff's claims regarding the West 30th Street ramp must be dismissed as a matter of law.

### 2. *The West 31st Street Ramp*

As with the West 30th Street ramp, the Complaint contains no allegations about the alleged deficiencies with the West 31st Street Ramp. Accordingly, these claims should be dismissed out of hand. *Feltenstein*, 184 F. Supp. 3d at 82.

Plaintiff's claims regarding the West 31st Street ramp also fail because the code provisions cited by plaintiff's expert do not apply to this ramp. The 1991 ADA Standards only require a single accessible route. *See* 1991 Guidelines § 4.1.2. Similarly, the 2010 guidelines only require "'at least one' accessible route from accessible parking spaces to the facility or building entrance that they serve." *Feltenstein*, 184 F. Supp. 3d at 82 (quoting 2010 Guidelines § 206.2). Here, an accessible route is provided via the West 30th Street ramp, as well as via the code compliant sidewalk ramps that are accessible via the parking lot. *See* 56.1 at ¶ 14 (citing Plaintiff's Second Expert Report (Ex. N) at ¶ 2.3); Mermaid's Supplemental Expert Report (Ex. O) at ¶ 6. Accordingly, Mermaid has fully complied with the ADA's requirements.

"Nowhere in the ADA guidelines is there the requirement that a plaintiff has the ability to select a specific pathway to make accessible when there is already another accessible route available." *Feltenstein*, 184 F. Supp. 3d at 82. In *Feltenstein*, plaintiff argued that offering both

a complaint and a non-compliant pedestrian pathway constituted impermissible segregation.  *Id*. at 83.  That is plaintiff's exact argument here.  The court in *Feltenstein* resoundingly rejected that premise, noting that "plaintiff does not dispute that non-disabled customers regularly use the [compliant] thoroughfare to access various facilities in the Front of the Shopping Center. Therefore, it is difficult to see why the [complaint] thoroughfare used by disabled and non-disabled visitors alike creates separate—nevermind unequal—access."  *Id*.  The exact same analysis applies with equal force here.  Plaintiff's complaints about the West 31st Street are therefore without merit and must be dismissed.

### 3.  *The Parking Lot Access Aisles*

Finally, Plaintiff alleges that the slopes of the parking lot access aisles are excessive.  The plaintiff's compliant regarding the access aisle in front of Rite Aid is based on a difference of 4/8 inch.  The plaintiff's complaint regarding the access aisle in front of Dunkin Donuts is based on a difference of 2/8 inch.  This alleged deviation is not even perceptible to the naked eye, as shown below (*see* 56.1 at ¶ 24):



Notably, there is no allegation that the subject parking lot was not code compliant when originally constructed.  Instead, Plaintiff alleges that in its current condition—more than 20 years after initial construction—the parking lot exhibits minor code deviations.  This is not an ADA violation.

The ADA Standards for Accessible Design are just that—design and construction standards.  Specifically, the code requires that public accommodations "be designed and constructed in such manner that the facility or part of the facility is readily accessible to and usable by individuals with disabilities."  28 C.F.R. § 35.151(a)(1).  Where, as here, the issue is not adherence to the code in the context of design and construction, strict compliance (i.e. exact mathematical precision) is not required.  While a public accommodation must remain accessible to individuals with disabilities, and property owners must maintain their property in an accessible condition, there is nothing in the ADA itself, or its accompanying guidelines, that requires strict code compliance throughout the life cycle of an aging property.

In this case, it is simply not technically feasible to permanently maintain the original slope.  Plaintiff's expert's recommendation is to "[r]epave the parking spaces and access aisle" in an effort to re-achieve the original slope.  Plaintiff's Third Expert Report (Ex. N) at ¶¶ 007, 008.  However, as Mermaid's expert explained, "the re-grading necessary to achieve a compliant slope between the access aisle and the right of the curb ramp would necessitate extending the asphalt into neighboring spaces or the vehicular way."  Mermaid's Supplemental Report (Ex. O) at ¶¶ 7, 8.   As such, modifying the parking lot in an attempt to achieve mathematical perfection would create a tripping hazard in the parking lot.  *See e.g.* Deposition Transcript of Dominic Marinelli, annexed to the Declaration of Jura Zibas as Exhibit P, at 79:5-22.

Moreover, per plaintiff's own expert report, these minor deviations in slope only exist in the narrow area where the parking lot asphalt meets the sidewalk ramp. *See* Plaintiff's Third Expert Report (Ex. N) at ¶¶ 007, 008. In other words, the "straight" route between the access aisle and the curb ramp fully complies. There is simply a slight deviation at the exact point where the pavement meets the sidewalk. Such a minor technical violation cannot, as a matter of law, deny plaintiff access to the use and enjoyment of the property.

As discussed above, the key inquiry is not whether there is exact numerical compliance with the code. Rather, the relevant inquiry is whether "persons with disabilities have the opportunity to benefit from public accommodations." *Indep. Living Res..*, 982 F. Supp. at 727. If equivalent access is provided, the property "does not violate the ADA merely by virtue of the fact [the property's] alternatives do not comply with the strict terms of the [code]." *Jones*, 2006 U.S. Dist. LEXIS 31766 at *21. Here, there were never any complaints about the parking lot prior to the instant lawsuit, and plaintiff herself admits that she is routinely able to access and make use of the property. *See* Brown Dep. at 16:8-11; *see also* Plaintiff's Response to Defendant's Proposed Rule 56.1 Statement, available at Dkt. 91, at ¶ 11 (admitting that plaintiff "has continued to use the property throughout the pendency of this lawsuit."). Accordingly, it is beyond dispute that equivalent facilitation has been achieved.

Moreover, Mermaid has endeavored to determine the cost and feasibility of re-paving the parking lot to ascertain whether improving the slope is even possible. A paving company was asked to assess the prospects of re-paving the lot. In August 2015, Mermaid was told that "[a] 2% pitch in the asphalt work is hard to achieve," and the paving company would not commit to being able to make the lot perfectly level. *See* 56.1 at ¶ 23. Despite this proviso, the cost of the proposed work was estimated at $135,000, and the lot would need to be closed for 7-10 days. *Id*.

As such, there is no "readily achievable" means of barrier removal "'the costs of which, facially, do not clearly exceed its benefits.'"  *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 373 (2d Cir. 2008); *see also* 56.1 at ¶ 16. But more importantly, as a matter of law, such superfluous remediation is not required where equivalent access has already been provided and plaintiff concedes that she has, at all times, been able to make use of the property.

Therefore, because no further alternations are plausible, necessary, or required by the code, plaintiff's case is moot and summary judgment should be granted.

## POINT III

## THE RECORD IS DEVOID OF EVIDENCE SUPPORTING ANY ELEMENT OF PLAINTIFF'S CLAIM UNDER 42 U.S.C. § 1985

Section 1985(3) creates a cause of action where "two or more persons in any State . . . conspire . . . for the purpose of depriving . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."  The elements of a claim for conspiracy to deprive an individual's civil rights under Section 1985(3) are (1) a conspiracy, (2) a purpose to deprive, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act in furtherance of the conspiracy and (4) resultant injury to person or property or a deprivation of any right of a citizen of the United States.  *Mian v. Donaldson, Lufkin & Jenrette Securities Corporation*, 7 F.3d 1085, 1087 (2d Cir. 1993).  Such conspiracy must also be motivated by some class-based, invidious discriminatory animus.  *Id*. at 1088.  Here, plaintiff cannot carry her burden of proof on any of these elements.

"When the burden of proof at trial would fall on the non-moving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim."  *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir.

2008).  The burden then "shifts to the nonmoving party to present specific evidence showing a genuine dispute." *Id*.  The current record is devoid of any evidence tending to prove any element of plaintiff's claim under Section 1985.

First, plaintiff cannot show a conspiracy between "two or more persons" as required by the statute.  There is only one answering defendant, and plaintiff has not attempted to develop any evidence of a relationship between Mermaid and a third party upon which a conspiracy claim might be based.  For this same reason, plaintiff also cannot show any act in furtherance of a conspiracy.

Second, there is absolutely no evidence of class-based animus.  At most, plaintiff alleges that there are technical code violations in the parking lot of Mermaid's shopping center.  Even if true, the evidence shows that these alleged deviations were caused by weather events and the passage of time—not a concerted effort to deprive plaintiff of her civil rights.  *See e.g.* 56.1 at ¶¶ 1-5.  Moreover, it is undisputed that Mermaid spent over $20,000 in an effort to address plaintiff's complaints.  *See* 56.1 at ¶¶ 13, 16.  As such, plaintiff cannot carry her burden of proof to demonstrate class-based animus.

Third, as discussed *supra* Point I, plaintiff has suffered no injury-in-fact.   Plaintiff therefore cannot prove any element of her Section 1985 claim, and plaintiff's First Cause of Action must be dismissed.

## POINT IV

## PLAINTIFF'S STATE AND CITY LAW CLAIMS MUST BE DISMISSED

In addition to her ADA and Section 1985 claims, plaintiff asserts a hodgepodge of other claims under the New York State Executive Law, the Administrative Code of the City of New York, the New York State Civil Rights Law, and the common law.  *See* Complaint, Dkt. No. 1.

8312309v.2

First, plaintiff's state and city law claims (causes of action 3-5) should be dismissed for the same reasons that her ADA claim fails. Plaintiff's claims under state and local law are predicated upon her ADA claims, as the Complaint does not contain any unique allegations specific to her state and local law claims. These state and local claims are thus generally governed by the same legal standards as her ADA claims and are properly evaluated under the standard set forth by the ADA. *See Hartnett v. Fielding Graduate Institute*, 400 F. Supp. 2d 570, 581 (S.D.N.Y. 2005), aff'd in part and rev'd in part on other grounds, 198 Fed. Appx. 89 (2d Cir. 2006); *Panzica*, 2007 U.S. Dist. LEXIS 42171, at *5 (E.D.N.Y. June 11, 2007).

The state law claims are defective for several additional reasons as well. First, to the extent that plaintiff argues her state law claims should survive because they permit monetary damages, this too fails. Plaintiff submitted no evidence that she suffered monetary damages, physical injury, or emotional distress. Accordingly, summary judgment should be granted on all claims.

Second, plaintiff's fifth cause of action (violation of NYSCRL § 40-d) specifically requires that "[a]t or before the commencement of any action under [§ 40-c], notice thereof shall be served upon the attorney general." *Cave v. E. Meadow Union Free Sch. Dist.*, 480 F. Supp. 2d 610, 642 (E.D.N.Y. 2007). Failure to do so "is fatal to [a plaintiff's] claim and require[s] dismissal of those causes of action." *Id.*; *see also Shepard v. Frontier Commc'n Servs., Inc.*, 92 F. Supp. 2d 279, 287 (S.D.N.Y. 2000) (granting summary judgment on N.Y. Civ. Rights Law claim for failure to comply with § 40-d). Here, the record is devoid of any evidence that plaintiff's NYSCRL § 40-c notice was served on the attorney general. Thus, dismissal is mandated.

22

Third, plaintiff's negligence cause of action is patently defective.  "Although the ADA does not preempt state common-law causes of action, a plaintiff may not establish a common-law negligence claim based purely on a failure to design a place of public accommodation in accordance with federal or state statutes, absent further injury." *Thomas v. West*, No. 14 CV 4459-LTS, 2017 U.S. Dist. LEXIS 37542, *30 (S.D.N.Y. Mar. 15, 2017)  (citing Francis v. Lo-Do Corp., No. 14-CV-5422, 2014 U.S. Dist. LEXIS 173479, 2014 WL 7180091, at *2 (S.D.N.Y. Dec. 5, 2014)).  As discussed *supra* Point I, plaintiff admits she has not been injured in any way beyond the mild inconvenience of traversing a somewhat bumpy sidewalk ramp.  Accordingly, plaintiff's negligence claims must be dismissed.

Finally, to the extent that any of plaintiff's state and city claims survive, the Court should decline to exercise jurisdiction over them.  Pursuant to relevant case law, courts should decline supplemental jurisdiction over state law claims, and indeed have done so, when a party's federal claims are dismissed.  "Where...all federal law claims are eliminated before trial, the traditional values of judicial economy, convenience, fairness, and comity weigh in favor of declining to exercise supplemental jurisdiction over any remaining state law claims." *Inguanzo v. Hous. & Servs., Inc.*, No. 12-CV-8212 (ER), 2014 U.S. Dist. LEXIS 132197, *72 (S.D.N.Y. Sept. 19, 2014) (declining supplemental jurisdiction over state and city law claims) (citations omitted); *see also Kolari v. New York-Presbyterian Hosp.*, 455 F. 3d 118, 122 (2d Cir. 2006) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors…will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Roggenbach v. Touro College of Osteopathic Medicine*, 7 F. Supp. 3d 338, 348 (S.D.N.Y. 2014) (after dismissing federal claims (including ADA claims), court "decline[d] to exercise supplemental jurisdiction over Plaintiff's remaining state and city law claims pursuant to the NYSHRL and the

NYCHRL."); *Cruz v. PS1 Contemporary Art. Ctr.*, No. 10-CV-4899 (RRM) (JMA), 2011 U.S. Dist. LEXIS 84763, *9-10 (E.D.N.Y. Aug. 1, 2011) (after dismissing federal discrimination claims, court found that state and city claims were "more appropriately determined in a state forum due to interests of comity and efficiency").

Accordingly, as detailed above, plaintiff's state and city law claims should be dismissed along with her ADA claims.  However, if any state or city law claims remain, the Court should decline to exercise supplemental jurisdiction over them in the event it grants summary judgment as to plaintiff's ADA and Section 1985 causes of action.

## CONCLUSION

Based on the foregoing, it is respectfully submitted that summary judgment should be granted in Defendant's favor, Plaintiff's Complaint should be dismissed in its entirety, and Defendant should be deemed "the prevailing party" pursuant to 42 U.S.C § 12205 with leave granted for Defendant to file a motion for attorney's fees and costs, together with such further relief as the Court deems just and fair.

Dated:  New York, New York
          August 21, 2017                          Respectfully submitted,


                                                    Wilson Elser Moskowitz Edelman & Dicker LLP


                                                    _____
                                                    Jura C. Zibas
                                                    Stephen J. Barrett
                                                    Attorney for Defendant
                                                    MERMAID PLAZA ASSOCIATES LLC
                                                    150 East 42nd Street
                                                    New York, NY 10017
                                                    212.490.3000 (Main)
                                                    212.490.3038 (Fax)
                                                    jura.zibas@wilsonelser.com
                                                    stephen.barrett@wilsonelser.com

8312309v.2